UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LANIER MCPHERSON,

               Plaintiff,             Case No. 1:22-cv-1020

v.                                         Honorable Phillip J. Green

UNKNOWN GARRETT, et al.,

               Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

2

28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

**I.     Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains, however, occurred at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan.  Plaintiff sues Sergeant Unknown Garrett and Corrections Officer Unknown Ivany.

Plaintiff alleges that on December 2, 2021, he underwent a discectomy with a spinal fusion at the Henry Ford Allegiance Hospital in Jackson, Michigan.  (ECF No. 1, PageID.4.)  He returned to LCF that same day "with a hard collared neck brace which [P]laintiff was detailed to wear at all times."  (*Id.*)

Plaintiff returned for a follow-up appointment on December 16, 2021, and was examined by Registered Nurse Chelsea Hall (not a party).  (*Id.*)  He was "pain free in his neck region at this time."  (*Id.*)  Plaintiff indicated that he "was experiencing some neck stiffness and discomfort which was normal."  (*Id.*)  Plaintiff was to continue to use his neck brace, but was given permission "to shower and expose his surgical site to soapy water while refraining from scrubbing or picking at it."  (*Id.*)

Plaintiff returned for a follow-up appointment with PA Dirk Peeters (not a party) on January 10, 2022.  (*Id.*)  Plaintiff "expressed delight with his healing and his almost non[-]existent pain levels in his neck and back regions at that point."  (*Id.*)  Plaintiff was "given permission to begin very light exercise not lifting anything over 25 lbs."  (*Id.*, PageID.5.)  Plaintiff claims that he "was instructed to continue to wear the neck brace for comfort and whenever walking in general," and claims he "was

4

instructed to remove the brace whenever comfort was an issue." (*Id.*) Plaintiff, however, has attached a copy of the progress notes from his follow-up appointment. (ECF No. 1-1, PageID.16–17.) In those notes, PA Peeters stated: "Patient is progressing very well. He can wear the collar for comfort only at this time and can remove it when he wants to." (*Id.*, PageID.17.)

On January 24, 2022, Plaintiff was sitting on his bunk watching television with his neck brace off when he was approached by Defendants and another unknown officer (not a party) during count time. (ECF No. 1, PageID.5.) Defendant Garrett told Plaintiff "to stand and place his hands behind his back so that he can be transported by foot to the Facility's Control Center. Plaintiff was to walk there on foot while handcuffed." (*Id.*) Plaintiff expressed that he was willing to comply, but told Defendant Garrett that he needed to put his neck brace on because he was "concerned about hurting himself further while executing an action such as placing his hands behind his back to be cuffed, let alone without the neck brace." (*Id.*) Plaintiff told Defendant Garrett that she could call health services "and verify everything that he was saying." (*Id.*)

Defendant Garrett told Plaintiff, "That's not my problem. Turn around and cuff up or we can make you." (*Id.*, PageID.6.) Plaintiff complied, and as he was cuffed, he "felt a cru[n]ching sensation and heard a popping noise in his [c]ervical [s]pine area." (*Id.*) Plaintiff was then taken to the Control Center. (*Id.*)

5

The next morning, Plaintiff "awoke to find his neck stiff and his upper back in pain." (*Id.*) "Plaintiff was feeling symptoms that he hadn't felt since prior to the procedure to correct said issues." (*Id.*) He sent a kite to Health Services, claiming that his complications "were due to being cuffed especially without his neck brace." (*Id.*) Plaintiff was subsequently transferred to the Bellamy Creek Correctional Facility and then to ICF. (*Id.*, PageID.6–7.)

Subsequently, on September 23, 2022, Plaintiff was taken to the hospital to have an MRI "due to the injury." (*Id.*) Plaintiff contends that the MRI showed multilevel degenerative changes in the cervical spine and claims that those changes are "a result of not being allowed to fasten on his medically required neck brace." (*Id.*) He avers that his condition "was altered significantly after [D]efendants['] improper and impermissible cuffing." (*Id.*, PageID.8.)

Based on the foregoing, Plaintiff asserts Eighth Amendment deliberate indifference to medical needs claims, as well as Fourteenth Amendment due process claims. (*Id.*) A liberal construction of his complaint also suggests that he may be raising an Eighth Amendment excessive force claim. Plaintiff seeks compensatory, punitive, and nominal damages. (*Id.*, PageID.9.)

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft*

6

*v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

A.      **Eighth Amendment Claims**

1.      **Deliberate Indifference to Medical Needs**

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v.*

8

*Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g.*, *Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,*

9

511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Plaintiff claims that he had a serious medical need—required use of the neck brace—at the time of the incident with Defendants. Specifically, Plaintiff contends that at his follow-up appointment with PA Peeters on January 10, 2022, he was "instructed to continue to wear the neck brace for comfort and whenever walking in general. Plaintiff was instructed to remove the brace whenever comfort was an issue." (ECF No. 1, PageID.5.)

Plaintiff, however, takes liberties with PA Peeters' instructions, which are included as an exhibit to Plaintiff's complaint. PA Peeters did not instruct Plaintiff to wear the neck brace whenever walking. Instead, PA Peeters stated: "Patient is progressing very well. **He can wear the collar for comfort only at this time and can remove it when he wants to.**" (ECF No. 1-1, PageID.17 (emphasis added).) Thus, Plaintiff's suggestion to Defendants that he was under doctor's orders to wear his neck brace whenever walking anywhere and that it was therefore medically necessary for Plaintiff to wear the neck brace is not supported by Plaintiff's own medical provider. It was not medically necessary for Plaintiff to wear the neck brace

10

at the time of the incident with Plaintiff and, therefore, Plaintiff has not sufficiently set forth that he had a serious medical need at that time.[2] Nothing in the complaint permits the Court to infer that Defendants intentionally interfered with prescribed treatment by not permitting Plaintiff to put on his neck brace before restraining him. *See Estelle*, 429 U.S. at 104–05. Accordingly, because Plaintiff has not sufficiently alleged that he had a serious medical need at the time he was cuffed by Defendants, his Eighth Amendment deliberate indifference claims against them will be dismissed.

### 2. Excessive Force

As noted above, the Court has liberally construed Plaintiff's complaint to assert Eighth Amendment excessive force claims against Defendants. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *See Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)). The Eighth Amendment also prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes*, 452 U.S. at 346 (quoting *Gregg v. Georgia*, 428 U.S. 153,

---

[2] In reaching this conclusion, the Court does not find that Plaintiff's *initial* spine-related issue that warranted surgery was not a serious medical need. Indeed, the fact that Plaintiff received surgery for his spine-related issue suggests that this issue was a serious medical condition. However, after Plaintiff received surgery to address his serious medical condition, his recovery went "well" and he had "almost non[-]existent pain levels in his neck and back regions." (ECF No. 1, PageID.4.) Thus, Plaintiff's spine-related issue—which was a serious medical condition *prior* to the surgery—had been addressed by the surgery and, as Plaintiff indicates in his complaint, he had largely recovered from the surgery at the time of Plaintiff's interaction with Defendants. Under these circumstances, Plaintiff's allegations, taken as true, do not suggest that he had a serious medical need—which required use of the neck brace—when the event giving rise to the present action occurred.

11

183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.*

But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotation marks omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to an Eighth Amendment claim. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. We ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments

12

necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9 (internal quotation marks omitted). The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle*, 429 U.S. at 103 ). While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

To the extent Plaintiff claims that Defendants' use of handcuffs while transporting him to the Control Center constituted excessive force, as explained below, he fails to state such a claim. As an initial matter, nothing in the complaint suggests that the use of restraints was not penologically justified because Plaintiff was being transported to another area of the facility—the Control Center—when the handcuffs were used. *See Rhodes*, 452 U.S. at 346; *Jones v. Toombs*, No. 95-1395, 1996 WL 67750, at *1 (6th Cir. Feb. 15, 1996); *Hayes v. Toombs*, No. 91-890, 1994 WL 28606, at * 1 (6th Cir. Feb. 1, 1994); *Rivers v. Pitcher*, No. 95-1167, 1995 WL 603313, at *2 (6th Cir. Oct. 12, 1995).

13

Furthermore, although Plaintiff alleges that as he was cuffed, he "felt a cru[n]ching sensation and heard a popping noise in his [c]ervical [s]pine area" and then in the morning following the use of the handcuffs, he had pain in his upper back and neck stiffness, Plaintiff's complaint is devoid of facts from which the Court could infer that Defendants acted maliciously and sadistically to cause Plaintiff harm. (ECF No. 1, PageID.6.) That is, besides alleging that Defendants handcuffed Plaintiff during his transport to the Control Center, Plaintiff alleges no facts to suggest that Defendants took any additional actions to cause harm to Plaintiff while handcuffing him or while transporting him. As discussed *supra*, at the time of the incident, Plaintiff had largely recovered from his surgery, and he was not required to use the neck brace. Instead, PA Peeters noted that Plaintiff could use the neck brace for comfort as needed. Under these circumstances, Plaintiff's allegation that he experienced pain and stiffness after being handcuffed, on its own—with no other facts alleged to suggest that the force was used maliciously or sadistically to cause harm— is insufficient to show that the use of the handcuffs constituted excessive force. Thus, any Eighth Amendment excessive force claims asserted against Defendants will be dismissed.

### B.  Fourteenth Amendment Due Process Claims

Plaintiff also contends that Defendants' "reckless disregard to [his] health and safety subjected [him] to conditions of confinement" that violated his rights under the Fourteenth Amendment's Due Process Clause. (ECF No. 1, PageID.8.) Presumably, Plaintiff is asserting substantive due process claims against Defendants.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Eighth Amendment applies to protect Plaintiff's right to be free from cruel and unusual punishment. *See supra* Part II.A. Furthermore, nothing in the complaint suggests that Defendants engaged in the sort of egregious conduct that would support a substantive due process claim.

15

Consequently, Plaintiff's Fourteenth Amendment due process claims will also be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: February 1, 2023          /s/ Phillip J. Green
                                 PHILLIP J. GREEN
                                 United States Magistrate Judge